UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RMF NOOTER, INC., an Ohio
corporation,

        Plaintiff,

                                  File No.   1:06-CV-298

v.

                                  HON. ROBERT HOLMES BELL

GLEESON CONSTRUCTORS, LLC, d/b/a
Gleeson Constructors of Iowa, LLC;
CONAGRA FOODS REFRIGERATED
FOODS CO., INC.; and WEST PLAINS
ENGINEERING, INC.,

        Defendants.
_____/

## OPINION

This construction dispute comes before the Court on the defendants' motions to dismiss and to stay pending arbitration. For the reasons that follow the Court will dismiss the action against the contractor but deny the remaining motions.

### I.

This action arises out Plaintiff RMF Nooter, Inc.'s ("RMF") work on a project involving the construction, remodeling, and rebuilding of Plants 7 and 9 at Defendant ConAgra Foods Refrigerated Foods Co., Inc.'s ("ConAgra") sausage processing facility in Quincy, Michigan (the "Project"). Defendant Gleeson Constructors, LLC ("Gleeson") was the general contractor for the Project. Defendant West Plains Engineering, Inc. ("West

Plains"), the project engineer, prepared plans and drawings that were provided to contractors who bid on the Project.  Gleeson entered into a subcontract agreement ("Subcontract") with Plaintiff.  The Subcontract provided that Gleeson would pay Plaintiff $2,439,950.00 for certain electrical work and materials.  Subcontr. at 1, Compl. Ex. 2.  The Subcontract also provided for adjustments for changes or additional work.  Subcontr., Terms & Conditions, ¶¶ 30 & 31.

Plaintiff alleges in its complaint that there were inaccuracies and omissions from the drawings, which gave rise to numerous extra work orders from Gleeson and purchase orders from ConAgra. Compl. ¶ 19.  There were also other changes in the work which gave rise to excessive extra work orders that dramatically changed the scope of RMF's work and extended the time necessary to perform the work.  *Id.* at ¶ 21-24.  Many of the extra work orders did not result in a Change Order to the Subcontract.  *Id.* at ¶ 25.  There were additional interruptions caused by, among other things, the stacking of trades, the failure to provide information, the late delivery of equipment, and the failure to coordinate the work of the various subcontractors.  *Id.* at ¶ 28.  Plaintiff contends that it has incurred inefficiency or impact damages in excess of $532,000.00 and extended field overhead and extended home office overhead in excess of $272,000.00.  Plaintiff also alleges damages due to Gleeson's refusal to release retention for work performed and materials provided for the Project in the amount of $379,447.70.

Plaintiff has alleged seven counts in its complaint: one count against Gleeson for breach of contract (Count I); three counts against Gleeson and ConAgra for *quantum meruit*, fraud, and negligent misrepresentation (Counts III, IV, and VII); two counts against ConAgra for breach of implied warranty and interference with contract (Counts II and V) and one count against West Plains for negligence (Count VI).

Gleeson has filed a motion to dismiss on the basis of an arbitration clause in the Subcontract. ConAgra has filed a motion to stay pending arbitration. West Plains has filed a motion to dismiss for failure to state a claim, or for more definite statement, and to stay pending arbitration.

## II.

Gleeson has moved to dismiss the complaint against it pursuant to Rule 12(b)(6) and the Federal Arbitration Act on the grounds that RMF and Gleeson have contractually agreed to arbitrate any disputes arising out of or relating to the Subcontract.

Paragraph 23 of the Terms and Conditions of the Subcontract sets forth the parties' agreement regarding the settlement of disputes arising out of or relating to the subcontract agreement. The settlement of disputes provision has two parts:

> 23A. In the case of any dispute between Subcontractor and Contractor which is **attributable to Owner**, Subcontractor agrees to be bound to Contractor to the same extent that Contractor is bound to Owner by the terms of the Contract Documents. Subcontractor also agrees to be bound to Contractor to the same extent Contractor is bound to Owner by the final decision of a court of competent jurisdiction, whether or not Subcontractor is a party to such proceedings. If such a dispute is prosecuted or defended by Contractor against Owner under the terms of the Contract documents or in court action,

3

> Subcontractor agrees to furnish all documents, statements, witnesses, and other information required by Contractor for such purposes.
>
> 23B.  If a dispute arises out of or relates to this Subcontract or breach thereof which is **not attributable to Owner**, the parties agree to first endeavor to resolve the dispute by **mediation**.  Thereafter, any unresolved controversy or claim arising out of or relating to this Subcontract or breach thereof shall be resolved by **arbitration** administered by the American Arbitration Association; and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

Subcontr., Terms and Conditions ¶23 (emphasis added).

There is no dispute that the Subcontract containing the arbitration clause is a "contract evidencing a transaction involving commerce," that is governed by the Federal Arbitration Act, 9 U.S.C. § 2.  There is also no dispute that the Supreme Court has "long recognized and enforced a 'liberal federal policy favoring arbitration agreements.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).  "[T]here is a general presumption of arbitrability, and any doubts are to be resolved in favor of arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Masco Corp. v. Zurich American Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004) (quoting *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 576-77 (6th Cir. 2003)).  "If parties contract to resolve their disputes in arbitration rather than in the courts, a party may not renege on that contract absent the most extreme circumstances." *Stout v. J.D. Byrider*, 228 F.3d 709, 715 (6th Cir. 2000).

"Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Masco*, 382 F.3d at 627 (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)).

RMF has asserted in a footnote of its response brief that Gleeson has abandoned its subcontract with RMF or, in the alternative, that the Agreement is void as it was procured by fraud and negligent misrepresentation. Pl. Resp. Br. at 5, n.4. This assertion is not supported by the complaint. The complaint itself alleges the existence of a valid contract, Compl. ¶ 33, and neither the fraud nor the misrepresentation claim seeks to void the contract.

More importantly, even if RMF has properly alleged that the Subcontract is void because it was procured by fraud and misrepresentation, RMF has not alleged any fraud or misrepresentation in connection with the agreement to arbitrate. The Supreme Court has made it clear that "a general arbitration clause is enforceable even if it is contained in a contract that is generally asserted to be voidable, unless the basis for rescission applies specifically to the arbitration clause." *Masco*, 382 F.3d at 628 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)). "The teaching of *Prima Paint* is that a federal court must not remove from the arbitrators consideration of a substantive challenge to a contract unless there has been an independent challenge to the making of the arbitration

5

clause itself." *Id.* at 629. RMF has not made any challenge to the making of the arbitration clause itself. Accordingly, the Court finds that there is a valid agreement to arbitrate.

The Court's second inquiry is whether the specific dispute falls within the substantive scope of the agreement to arbitrate. This is where the parties' true dispute lies. Gleeson contends that RMF's claims against Gleeson in this case arise out of and relate to the Subcontract, and that they must accordingly be submitted to mediation and arbitration pursuant to paragraph 23B. RMF contends that because its claims against Gleeson are tied to claims against ConAgra, RMF's claims against Gleeson in this action are beyond the scope of the arbitration agreement.

"[A] disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court." *Howsam*, 537 U.S. at 84. "Courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration," and "any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Stout*, 228 F.3d at 714 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 626 (1985)). Although ambiguities in the contract should be resolved in favor of arbitration, the Court recognizes that arbitration is a matter of contract between the parties, and the Court will "not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *Albert M. Higley Company v. N/S Corp*., 445 F.3d 861, 863 (6th Cir. 2006) (quoting *E.E.O.C. v. Waffle*

6

*House, Inc.*, 534 U.S. 279, 294 (2002) (internal citation omitted)). When an arbitration clause broadly covers any disputes with respect to the interpretation or performance of a contract, "[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steel Workers of America v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 584-85 (1960)). On the other hand, when an arbitration clause is narrowly drawn, the policy in favor of arbitration does not have as strong an effect. *Cummings v. FedEx Ground Package System, Inc*., 404 F.3d 1258, 1262 (10th Cir. 2005).

RMF contends that the arbitration clause is narrowly drawn because it applies only to disputes which are not attributable to the owner, and that accordingly there is no strong presumption of arbitrability. The Court disagrees with RMF's characterization of ¶ 23B as a narrow arbitration provision. The arbitration clause covers **all disputes** with the Contractor that arise out of or relate to the Subcontract. The arbitration clause does not exclude any particular grievance with the Contractor from arbitration. This can only be understood as a broad arbitration provision.

RMF and Gleeson dispute the meaning of the arbitration clause in ¶ 23B of the Subcontract. RMF contends that the arbitration clause applies only to claims that **only** Gleeson is at fault and that do not attribute fault to the Owner, ConAgra. Pl. Resp. Br. at 1 & 6. RMF contends that because it has alleged that ConAgra contributed to its damages, the

dispute is attributable not only to Gleeson, but also to the owner, and that therefore ¶ 23B does not apply. RMF contends that when it claims that ConAgra is at fault, ¶ 23A comes into play, and under ¶ 23A it is bound to pursue its claim in the same way that Gleeson would be bound to pursue a claim against ConAgra under Gleeson's contract with ConAgra which, according to RMF, does not include an arbitration provision.

According to Gleeson, RMF has misconstrued ¶ 23. Gleeson contends that ¶ 23 must be read in conjunction with ¶ 22 which gives RMF "the benefit of all rights, remedies, and redress against Contractor which Contractor, by the Contract Documents, has against Owner." Subcontr. ¶ 22.[1] Gleeson contends that read together, paragraphs 22, 23A and 23B mean that RMF cannot by-pass Gleeson and go directly to ConAgra to argue its dispute; that RMF cannot assert any greater rights to damages or contract rights against Gleeson than Gleeson could assert against ConAgra; and that when the claim is that ConAgra was at fault, the procedure is for Gleeson and ConAgra to resolve it, and the outcome of that is binding

---

[1]Paragraph 22 reads in full:

> Subcontractor shall be bound to Contractor by the terms of the Subcontract and of the Contract Documents between Owner and Contractor; shall assume toward Contractor all obligations and responsibilities which Contractor, by the Contract Documents, assumes toward Owner; and shall have the benefit of all rights, remedies, and redress against Contractor which Contractor, by the Contract Documents, has against Owner insofar as applicable to this Subcontract, provided that, where any provision of the Contract Documents between Owner and Contractor is inconsistent with any provision of this Subcontract, this Subcontract shall govern.

Subcontr. ¶ 22.

on RMF. Thus, according to Gleeson, if RMF has an impact claim, that claim must be made against Gleeson under a breach of contract theory, and such claims are subject to arbitration.

All of RMF's claims against Gleeson arise out of or relate to the Subcontract or breach thereof. Although there is arguably some ambiguity regarding the process for resolving complaints that are lodged against both the Owner and the Contractor, RMF has not pointed to any express provision excluding this grievance from arbitration. The Court cannot say "with positive assurance" that the arbitration clause "is not susceptible of an interpretation that covers the asserted dispute." *Masco*, 382 F.3d at 627. Gleeson's interpretation of the contract provisions is not unreasonable. Moreover, given the strong policy favoring the enforcement of arbitration agreements, the Court does not believe RMF should be able to defeat the arbitration clause simply by combining its claims against Gleeson with claims against ConAgra. Because the Court is satisfied that RMF's claims against Gleeson are arguably within the scope of the arbitration agreement, the Court must give effect to the arbitration clause.

One who is subject to an arbitration agreement cannot be allowed "to ignore the contract and resort to the courts" as "[s]uch a course could lead to prolonged litigation, one of the very risks the parties, by contracting for arbitration, sought to eliminate." *Southland Corp. v. Keating*, 465 U.S. 1, 7 (1984). Most district courts in this circuit agree that the best procedure for enforcing arbitration agreements is to dismiss the court action without prejudice. *See Stout*, 228 F.3d at 714 (affirming district court's dismissal of complaint

"without prejudice to reinstatement should further proceedings be needed after arbitration."); *Saneii v. Robards*, 187 F. Supp. 2d 710, 713 (W.D. Ky. 2001) (dismissing complaint without prejudice in light of binding arbitration agreement); *Tanglewood Hospitality Venture, Inc. v. Ogle*, 2005 WL 2060769, *2 (E.D. Tenn. 2005) (dismissing without prejudice to enable resolution of dispute by arbitration). The Court agrees with this procedure. Accordingly, the Court will dismiss RMF's claims against Gleeson without prejudice so that RMF may pursue resolution of its claims against Gleeson pursuant to the procedures outlined in the Subcontract.

### III.

Defendant West Plains has moved for dismissal for failure to state a claim pursuant to Rule 12(b)(6), or, in the alternative, for a more definite statement pursuant to Rule 12(e).

The Federal Rules of Civil Procedure provide for a liberal system of notice pleading. FED. R. CIV. P. 8(a). A plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

An action may be dismissed pursuant to Rule 12(b)(6) if the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain either direct or inferential allegations

respecting all the material elements to sustain a recovery under some viable legal theory. *Allard v. Weitzman (In re DeLorean Motor Co.),* 991 F.2d 1236, 1240 (6th Cir. 1993). When considering a motion to dismiss, all well-pleaded allegations in the complaint are treated as true. Dismissal of the complaint is proper only if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims that would entitle it to relief. *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 562 (6th Cir. 2003); *Goad v. Mitchell*, 297 F.3d 497, 500 (6th Cir. 2002).

RMF alleges in Count VI of its complaint that West Plains is liable for negligence. RMF alleges generally that West Plains had a duty to exercise reasonable care in the preparation of the plans and specifications and to provide accurate and complete drawings so that RMF could accurately bid the electrical portion of the Project, that West Plains breached this duty, and that RMF suffered damages as a result. Compl. ¶¶ 79-81.

West Plains contends that although RMF has alleged that West Plains' drawings were "inaccurate and incomplete," RMF has not alleged that West Plains made any representations to RMF regarding the accuracy or completeness of its drawings, nor has RMF alleged that it relied on any representation or assurance by West Plains regarding the drawings. RMF has only alleged that Gleeson and ConAgra represented that the drawings were accurate, and that it relied on the representations of Gleeson and ConAgra in submitting its bid for the project. Compl.¶¶ 11-12. West Plains contends that because RMF has not alleged that it had a contract with West Plains or that West Plains ever made any representation or warranty

concerning the bid drawings to RMF, or that it relied on any representations by West Plains, RMF has not alleged facts sufficient to create any duty owed by West Plains to RMF, or any breach of any duty.

Under Michigan law "a plaintiff may maintain an action in tort where he is injured by the defendant's negligent performance of contract even where there is no privity between the parties." *National Sand, Inc. v. Nagel Const., Inc.*, 182 Mich. App. 327, 331, 451 N.W.2d 618, 620 (1990). In *National Sand*, the court held that an excavator hired by a contractor could maintain a tort claim against the engineering company that prepared the plans and specifications for the project despite a lack of privity between the excavator and the engineering company. 182 Mich. App. at 331. The *National Sand* court relied on *Williams v. Polgar*, 391 Mich. 6, 215 N.W.2d 149 (1974), where the Michigan Supreme Court held that a buyer injured by the negligence of a title abstracter could maintain an action in tort for negligent misrepresentation where the title abstractor should have foreseen that the buyer would rely on the faulty abstract. *Id*. at 20-23. It also relied on *Bacco Construction Co. v. American Colloid Co.*, 148 Mich. App. 397, 384 N.W.2d 427 (1986), *overruled in part on other grounds, Local 1064, RWDSU AFL-CIO v. Ernst & Young*, 204 Mich. App. 445, 448-49, 516 N.W.2d 492 (1994), where the court allowed a contractor to maintain an action in tort against a project engineer for failure to make proper calculations and specifications for the construction of a waste water treatment lagoon system despite the lack of privity of contract. *Id.* at 413-16. The *Bacco* court adopted the reasoning of *Donnelly Construction*

*Co. v. Oberg/Hunt/Gilleland*, 139 Ariz. 184, 677 P.2d 1292 (1984), where the court held that a contractor could maintain an action in negligence against architects for errors in plans and specifications prepared by the architects that resulted in increased cost of construction, where, despite a lack of privity of contract, it was foreseeable that the contractor, who was hired to follow the plans, would incur increased costs if those plans were not accurate. *Id.* at 1296. As noted in *Bacco*, the *Donnelly* court held that "design professionals are liable for foreseeable injuries to foreseeable victims which proximately result from negligent performance of their professional duties." 148 Mich. App. at 414.

Based upon the cases cited above, it appears to this Court that although RMF has not specifically pleaded the basis of West Plains' duty to it, an inference can be drawn from the allegations that it was foreseeable that RMF would rely on West Plains' drawings. West Plains correctly notes that changes in the Project after the initial drawings were completed cannot be attributed to West Plains, and cannot form the basis of RMF's claim that West Plains breached a duty to RMF. Although many of RMF's complaints fall into this category, RMF has also alleged inaccuracies, misrepresentations, and omissions in the initial drawings that can be attributed to West Plains. Compl. ¶ 19. RMF has also alleged that the inaccuracies in the drawings resulted in inefficiency or impact damages and extended field overhead and home office overhead. Compl. ¶ 30. These allegations support RMF's assertion that West Plains breached a duty to RMF, and that the breach was a proximate cause of at least some of RMF's damages.

The Court is satisfied that the complaint contains all the material elements to sustain a recovery under a viable legal theory. Plaintiff's complaint is not so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recovery. West Plains' motion to dismiss will accordingly be denied. Of course, the denial of a motion to dismiss for failure to state a claim does not preclude a later summary judgment motion arguing that the plaintiff in fact cannot show evidence to support the claim. *Stemler v. Florence*, 350 F.3d 578, 590 (6th Cir. 2003).

The Court also concludes that RMF's claim against West Plains is not "so vague or ambiguous" that West Plains "cannot reasonably be required to frame a responsive pleading." FED. R. CIV. P. 12(e). The essence of RMF's claim against West Plains is clear, and the complaint contains detailed allegations regarding the inaccuracies, misrepresentations, and omissions in the drawings. Compl. ¶¶ 18-19. The complaint is sufficient to give West Plains fair notice of what RMF's claim is and the grounds upon which it rests. The Court observes no need for a more definite statement. Accordingly, West Plains' alternative motion for more definite statement will also be denied.

### IV.

Both West Plains and ConAgra have moved to stay this litigation pending the outcome of the mediation and/or arbitration between Gleeson and RMF. They contend that because RMF's main grievance is against Gleeson, the outcome of the RMF/Gleeson arbitration may determine or resolve RMF's claims against ConAgra and West Plains. Accordingly, they

14

contend that a stay of the claims against ConAgra and West Plains will serve the interest of judicial economy.

When a complaint presents a combination of arbitrable and non-arbitrable claims, the Court has discretion to stay the non-arbitrable issues pending arbitration as a matter of discretionary control of the court's docket. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20, n.23 (1983). *See also AgGrow Oils, L.L.C. v. National Union Fire Ins. Co.*, 242 F.3d 777, 782 (8th Cir. 2001) (holding that district court has discretion to stay third party litigation involving common questions of fact within scope of arbitration agreement); *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 76 (2d Cir. 1997) ("district courts, despite the inapplicability of the FAA, may stay a case pursuant to 'the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" ); *Asahi Glass Co., Ltd. v. Toledo Eng'g Co., Inc.*, 262 F. Supp. 2d 839, 845 (N.D. Ohio 2003) ("a district court has discretion to stay third party litigation involving common questions of fact within the scope of an arbitration agreement to which the third party is not a signatory").

In considering a motion to stay filed by non-parties to the arbitration agreement, the court applies the "doctrine of abstention applicable to parallel proceedings in judicial and arbitral fora." *IDS Life Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524, 530 (7th Cir. 1996). It may be appropriate to grant a stay "where the pending proceeding is an arbitration in which issues involved in the case may be determined." *Sierra Rutile Ltd. v. Katz*, 937 F.2d 743, 750

(2nd Cir. 1991) (quoting *Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co.*, 339 F.2d 440, 441 (2nd Cir. 1964)).  It may also be appropriate to grant a stay where it is necessary "to further the strong federal policy favoring agreements to arbitrate." *AgGrow*, 242 F.3d at 782 (noting that suit against surety could be used to avoid duty to arbitrate performance issues with contractor under construction contract).  In any event, the movant bears a heavy burden of showing necessity for the discretionary stay, and the stay should not unduly prejudice the non-moving litigant.  *Sierra Rutile*, 937 F.2d at 750.

In support of their motions to stay Defendant ConAgra and West Plains note that the identical damages are sought from all Defendants, and that if RMF is successful in the arbitration of its claims against Gleeson, it will be made whole and would have no need to litigate against the remaining parties.  At the very least, these Defendants note that the gathering of evidence during in the arbitration will enable the litigants to evaluate the strength of their claims and defenses, to refine the scope of their discovery, and to streamline trial proofs.

Although there is much to be said for these arguments, the Court is not convinced that the circumstances of this case are sufficient to justify a stay.  There are certainly common issues of fact in RMF's claims against Gleeson and RMF's claims against ConAgra and West Plains. Nevertheless, RMF's claims against ConAgra and West Plains are independent of its claims against Gleeson.  Resolution of RMF's claims against Gleeson through mediation or arbitration will not resolve RMF's claims against ConAgra and West Plains.  Neither

16

ConAgra nor West Plains will be bound by any arbitration award. Even if RMF receives an arbitration award for the full amount of its damages, it is entitled to pursue each wrongdoer separately until it receives full satisfaction on any judgment or award. A stay under the facts of this case would merely delay resolution of RMF's claims against ConAgra and West Plains. Accordingly, ConAgra and West Plains' motions to stay pending arbitration will be denied.

    An order consistent with this opinion will be entered.


Date:   November 13, 2006          /s/ Robert Holmes Bell
                                                     ROBERT HOLMES BELL
                                                     CHIEF UNITED STATES DISTRICT JUDGE